**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CAZ KENNEDY,
ADC #127322**                                                                       **PLAINTIFF**

V.                     Case No. **4:07-cv-00795 SWW-BD**

**JOHN BYUS,** *et al.*                                                          **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**      **Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date you receive the Recommended Disposition. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

      Clerk, United States District Court
      Eastern District of Arkansas
      600 West Capitol Avenue, Suite A149
      Little Rock, AR 72201-3325

## II.     Background:

Plaintiff Caz Kennedy, an Arkansas Department of Correction ("ADC") inmate, filed this action pro se under 42 U.S.C. § 1983. According to allegations in Plaintiff's Complaint and the grievances attached to his Complaint, in April 2006, Plaintiff began experiencing difficulty breathing and also had a sore throat. In June 2006, an x-ray of Plaintiff's neck was taken. The x-ray revealed that Plaintiff had a foreign metallic object lodged in his thyroid gland. At that time, he was referred to an ear, nose and throat specialist.

On July 10, 2006, a physician examined Plaintiff and recommended that a CT scan be performed. According to the grievances attached to Plaintiff's complaint, the CT scan was conducted sometime between July and December 2006. In December 2006, Plaintiff was sent to the Diagnostic Unit for an additional test, an esophagogastroduodenoscopy ("EGD"). The surgeon on staff at the Diagnostic Unit decided that the test should be conducted at a facility that could better accommodate Plaintiff's cardiac needs, so on May 3, 2007, Plaintiff was seen by a gastroenterologist. The EGD was completed on May 8, 2007.

Plaintiff complains that he continues to experience pain in his neck, and that the metallic object remains lodged in his thyroid nearly two years after it was discovered.

Plaintiff also complains that Dr. Charles Leggett took his prescription medicine from him because Dr. Leggett became irritated with Plaintiff.[1]

Plaintiff originally named as Defendants John Byus, Director of Medical Services for the ADC, Dr. Charles Leggett, and Dream Redic-Young, the CMS Medical Infirmary Administrator. The Court has dismissed Plaintiff's claims against Defendant Byus (docket entry #29).

Separate Defendants Leggett and Redic-Young now have filed a Motion for Summary Judgment (#43). Defendants argue that they are entitled to summary judgment because Plaintiff cannot show that he has suffered any injury as a result of any alleged delay in treatment or that Defendants acted with deliberate indifference to his medical needs. In support of their motion, Defendants attach Plaintiff's medical records and the declaration of Dr. Roland Anderson.

Plaintiff has responded to the Motion for Summary Judgment (#63 and #65). In his Response, Plaintiff states that, although he has been seen by various doctors, Defendants have failed to provide him "actual treatment" (#63 at p.2). Plaintiff further argues that Defendants have failed to act, even though they know that Plaintiff continues

---

[1] The Court will refer to this Defendant as his name appears on the docket, Charles Leggett. However, in several of the medical Defendants' pleadings, this Defendant is identified as Dr. Liggett.

to experience a "real risk of chocking to death," and that their failure amounts to deliberate indifference (#63 at p.4).[2]

In addition to his Response, Plaintiff has filed a Rebuttal to Dr. Roland's affidavit (#67). In his Rebuttal, Plaintiff claims that Dr. Roland's testimony is either "[f]alse, an embellishment to make his declaration more believable, or [a] misleading statement[] of facts" (#67 at p.2). Plaintiff believes that the foreign metallic body lodged in his thyroid is a hypodermic needle.

After Plaintiff filed his Response to the Motion for Summary Judgment and his Rebuttal to Dr. Roland's affidavit, he requested that the Court issue a subpoena to Sheila Hill, the Keeper of Medical Records at the Randall L. Williams Unit of the ADC, for Plaintiff's entire medical file (#68). Although the Court declined to grant Plaintiff's broad request in its entirety, the custodian of records, or her designee, at the Randall Williams Correctional Facility was ordered to provide Plaintiff access to copies of his medical records dating from April 2006 to the present that relate to his thyroid and the object lodged therein (#70). In addition, the Court allowed Plaintiff additional time to respond to the Motion for Summary Judgment so that he could provide the Court with evidence showing any detrimental effect of the alleged delay in medical treatment.

---

[2] The Court notes that Plaintiff mentions both the Americans with Disabilities Act and the Arkansas Adult Abuse statute in his response to Defendants' Motion. Because these claims were not raised in Plaintiff's Complaint, they will not be addressed in this Recommendation.

Plaintiff subsequently filed a motion for leave to amend his complaint (#69). The Court granted Plaintiff's Motion, but cautioned Plaintiff that he had failed to mention any claim against Defendant Leggett in his proposed Amended Complaint. Because it is well settled that an amended complaint supercedes an original complaint and renders the original complaint without legal effect, see *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (citing *Washer v. Bullitt County*, 110 U.S. 558, 562, 4 S.Ct. 249 (1884)), Plaintiff was warned that, if he intended to pursue his claims against Defendant Leggett, he would have to so state in his Amended Complaint.

In the proposed Amended Complaint Plaintiff submitted in support of his motion to amend, Plaintiff attempted to add claims for adult abuse and violations of the Americans with Disabilities Act ("ADA"). The Court noted in its Order granting the Motion to Amend that there is no private cause of action for statutory abuse of an adult and that an ADA claim requires a description of the alleged disability and the benefits denied because of that disability. Plaintiff was given twenty days in which to file his Amended Complaint, but he did not file a complete Amended Complaint.[3]

---

[3] Plaintiff filed a pleading titled "Amended Correction for Amended Complaint." In the pleading, Plaintiff requested that the claims raised in his amended complaint be considered in addition to those raised in his original complaint (#74). However, in the Order granting Plaintiff's Motion to Amend, the Court instructed Plaintiff to file an Amended Complaint within twenty days. It appeared that Plaintiff filed the "Amended Correction for Amended Complaint" rather than an Amended Complaint. Accordingly, the Court declined to grant Plaintiff's request, and informed that if he chose to file an Amended Complaint in this matter, he could make such a request. Plaintiff filed two pleadings in response to this Court's order titled "appeal to District Court Judge"(#85 and

Plaintiff then filed a Motion to Compel in an attempt to obtain copies of his medical records. Although the Court ordered the Defendants to give Plaintiff access to such files, it denied Plaintiff's request for actual copies (#75).

Defendants filed a Response to the Court's October 9, 2008 Order, stating that Plaintiff had reviewed his medical records for approximately one hour on three occasions (#77). They requested that the time for Plaintiff to respond to their Motion for Summary Judgment begin to run. The Court agreed and ordered Plaintiff to respond to the pending Summary Judgment Motion within fourteen days (#78).

Plaintiff filed a Motion for Order, again requesting copies of his medical records (#81). Plaintiff claimed that Defendants were hiding certain documents from him and failing to provide him access to all of his medical records. In denying Plaintiff's motion, the Court noted that Defendants had filed the Motion for Summary Judgment now at issue in June of 2008, and that Plaintiff had been given ample time to respond (#82). Nonetheless, Plaintiff was provided ten additional days to respond to the Motion for Summary Judgment. The Court specifically advised Plaintiff that, although he was not provided actual copies of his medical records, he could provide other documents, including affidavits, to rebut the evidence presented by Defendants in support of their

---

#86). Those pleadings were docketed as Responses to the Motion for Summary Judgment and should be considered by the District Court as objections to the instant Recommended Disposition.

Motion (#82). Plaintiff subsequently submitted various documents to the Court for its consideration, including affidavits and grievance forms (#84 and #87).[4]

After reviewing all of the evidence presented in this matter, the Court finds that Defendants' Motion for Summary Judgment (#43) should be GRANTED.

## III.   Discussion:

### A.   *Summary Judgment Standard*

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.") If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which

---

[4] In the grievances Plaintiff submits to the Court, he argues that he has been denied medical treatment in retaliation for filing lawsuits against employees of CMS. Plaintiff did not make this claim in his Complaint. Accordingly, the Court will not address that argument in this Recommended Disposition.

that party will bear the burden of proof at trial, summary judgment should be granted. See *Celotex,* 477 U.S. at 322. "Although it is to be construed liberally, a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

**B.** ***Discussion***

Defendant Redic-Young asserts that Plaintiff's claims against her should be dismissed for three reasons. First, Plaintiff failed to reference her or raise any allegations against her in his Complaint. Second, Plaintiff failed to exhaust his administrative remedies with regard to his claims against her as required by the Prison Litigation Reform Act; and third, Plaintiff cannot hold her responsible under a respondeat superior theory of liability. Defendant Leggett claims that Plaintiff cannot show that he acted with deliberate indifference to Plaintiff's medical needs. After reviewing the parties' filings, including exhibits, the Court finds that both Defendants are entitled to judgment as a matter of law.[5]

Prison officials or their agents violate the Eighth Amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's]

---

[5] Because the Plaintiff cannot prove that Defendants acted with deliberate indifference to his medical needs, the Court declines to address Defendant Redic-Young's respondeat superior argument. Further, although Defendant Redic-Young claims that Plaintiff failed to exhaust his claims against her as required by the PLRA, Defendants provide no evidence on this issue outside stating so in their Statement of Undisputed Facts (#48 at ¶ 19). As a result, Defendant Redic-Young is not entitled to summary judgment on that basis.

serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285 (1976). The Eighth Circuit Court of Appeals has interpreted this standard as including both an objective and a subjective component: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (citing *Estelle*, 429 U.S. at 104-05).

When an inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.'" *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995), abrogation on other grounds recognized by *Reece v. Groose*, 60 F.3d 487, 492 (8th Cir. 1995) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Therefore, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (quoting *Hill*, 40 F.3d at 1188);

see also *Jackson v. Hallazgo*, 30 Fed. Appx. 668 (8th Cir. Mar. 6, 2002) (unpub. per curiam) (citing *Coleman v. Rahija*, 114 F.3d at 778, 784 (8th Cir. 1997)) ("[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); *O'Neal v. White*, 221 F.3d 1343, *1 (8th Cir. July 12, 2000) (unpub. per curiam) (citing *Crowley*, 109 F.3d at 502) (concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim")). Here, Plaintiff has failed to submit any such evidence, or to describe anything in his medical records that would refute the Defendants' assertions.[6]

In support of their Motion for Summary Judgment, Defendants attach excerpts from Plaintiff's medical file. These records generally support the sequence of events included in Plaintiff's Complaint. In June 2006, an x-ray revealed that Plaintiff had a foreign metallic object lodged in the soft tissue along the right side of his neck (#48 at p.9).[7] On July 17, 2006, a CT scan of Plaintiff's neck was performed (#48 at p.22). The CT scan also indicated that there was a metallic foreign body if the right soft tissue of the

---

[6] Although Plaintiff was not provided actual copies of his medical records, he was provided access to these records and was advised that he could rebut Defendants' evidence through affidavits (#82). Plaintiff failed to present or point to any evidence that would create a genuine issue of material fact on Plaintiff's deliberate indifference claim.

[7] The Court notes that in the grievance forms Plaintiff submitted to the Court, Wendy Kelley notes that the foreign metallic object had been lodged in Plaintiff's throat for ten years (#87 at p.2).

neck anterior to the right thyroid glad (#48 at p.22). The physician who conducted the CT scan indicated that an esophogram might be helpful if Plaintiff continued to complain about difficulty swallowing (#48 at p.5). On August 1, 2006, a limited barium swallow test was performed (#48 at p.6). The test indicated that the metallic body did not appear to be associated with the esophagus and there was no evidence of aspiration or obstruction of the visualized upper esophagus (#48 at p.6). The physician who conducted the exam noted that there was no digital imaging, which limited the evaluation.[8] As a result, the physician indicated that a follow-up barium swallow would be helpful (#48 at p.7).

On May 8, 2007, an EGD with biopsy was performed (#48 at p.10). This procedure revealed that Plaintiff had an ulcerated GE junction and a hernia in his esophagus (#48 at p.10). The physician who conducted the procedure recommended that Plaintiff take Omeprazole, return to the clinic in six weeks, and, if Plaintiff continued to have dysphagia after three months of taking the medicine, an esophageal dilation would be considered (#48 at p.10). Importantly, the report did not mention the foreign metallic body lodged in Plaintiff's throat.

On November 6, 2007, a consultation request was filed on behalf of Plaintiff indicating that Plaintiff was suffering from symptoms of the flu and rectal bleeding (#48

---

[8] Plaintiff refers to the "botched" barium swallow in his Rebuttal to Dr. Anderson's affidavit (#67 at p.3).

at p.32). There is no mention of Plaintiff's thyroid or his alleged inability to swallow in this request.

The medical records provided by Defendants also indicate that Plaintiff was transferred to Ouachita River Correction Unit on February 7, 2008. Upon his arrival, his appearance was noted as good, with no current complaints (#48 at p.33). Specifically, Plaintiff noted that he did not suffer from regurgitation, he had no difficulty swallowing, and no pain upon swallowing (#48 at p.35). These notes also indicate that those symptoms had been improving. Further, the medical notes indicate that these symptoms were not aggravated at night, directly contradicting Plaintiff's complaints in his Rebuttal to Dr. Anderson's affidavit.[9]

Defendant Leggett examined Plaintiff on February 19, 2008, due to complaints of lower back pain (#48 at p.26). The notes provided do not mention any complaints regarding Plaintiff's alleged inability to swallow or pain when swallowing. Further, Plaintiff's medical records indicate that he also was seen by medical staff on May 1, 2008 (#48 at p.27- 31). Again, those notes do not contain any reference to Plaintiff's alleged inability to swallow.

Further, in the grievance forms Plaintiff provided the Court, Wendy Kelley, Deputy Director of the ADC, notes that Plaintiff was seen by Dr. Antosh on June 26,

---

[9] In his Rebuttal to Dr. Anderson's affidavit, Plaintiff claims that "[t]he fear of choking is especially [bad] when sleeping" (#67 at p.4)

2008, September 30, 2008, and October, 7, 2008, but he never mentioned the metal object lodged in his neck (#87 at p.2). Further, Ms. Kelley's response to Plaintiff's grievance indicates that Plaintiff was seen by the nursing staff at the ADC on July 2, 2008, September 12, 2008, and September 19, 2008, and he did not complain of an inability to swallow (#87 at p.2). The Health Services Administrator/Mental Health Supervisor also indicated that Plaintiff was seen by medical staff on March 4, 2008, April 15, 2008, and April 17, 2008, and never reported any pain or difficulty swallowing (#87 at p.11).

Accordingly, Plaintiff cannot show that Defendants have acted with deliberate indifference to his medical needs. Not only have multiple doctors examined Plaintiff and Plaintiff's medical file, but also x-rays have been taken, and a CT scan, a barium swallow test, and an EGD have been performed. Plaintiff cannot credibly claim that Defendants have ignored his situation. Although these extensive tests may not have provided Plaintiff with the relief he seeks, he can hardly claim that Defendants have disregarded his serious medical needs. See *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285 (1976) (where medical personnel saw inmate 17 times in three months and treated back strain with bed rest, muscle relaxants, and pain relievers, their failure to x-ray his broken back or implement other diagnostic techniques or treatment was not deliberate indifference); *Sherrer v. Stephens*, 50 F.3d 496 (8th Cir. 1994) (holding that treatment of inmate's broken finger did not rise to the level of deliberate indifference based on evidence that he received x-rays, painkillers, instructions to apply ice, and was examined by orthopedists);

and *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993) (holding that although physician misdiagnosed inmate's condition and method of physical examination and treatment may not have followed community standards, conduct did not amount to deliberate indifference). Further, although Plaintiff clearly seeks to have the metal object removed, in the medical records provided to the Court, such a procedure has never been recommended.

Plaintiff essentially argues that he disagrees with the treatment that he has been provided. Because a plaintiff's disagreement with treatment is insufficient to establish liability under § 1983, Defendants are entitled to judgment as a matter of law. See *Estate of Rosenberg v. Crandell*, *supra*.

Further, Plaintiff's medical records belie Plaintiff's claim that Defendant Leggett discontinued Plaintiff's medicine because he became irritated with Plaintiff. In the records presented to the Court, there is no mention of discontinuing Plaintiff's prescriptions. Rather, a complete list of Plaintiff's prescriptions is included in these documents (#48 at p.27 - 31). Further, Plaintiff's medical records indicate that Dr. Leggett provided Plaintiff prescriptions on at least one date (#48 at p.26). In addition, Plaintiff's records indicate that following the EGD, he was instructed to take Omeprazole. Plaintiff failed to present any evidence that he was not provided this medication or that Defendant Leggett ordered it discontinued. As a result, Plaintiff has failed to create a genuine question of material fact on this issue precluding judgment as a matter of law.

**IV.    Conclusion:**

The Court recommends that the District Court GRANT Defendants' motion for summary judgment (#43).  Plaintiff's claims should be dismissed with prejudice.

DATED this 12th day of December, 2008.

_____
UNITED STATES MAGISTRATE JUDGE